FILED
2023 May-01  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**KEITH LANG & KATHRYN LANG,**
    Plaintiffs,

**v.**

**STATE FARM FIRE & CASUALTY COMPANY,**
    Defendant.

**Case No. 4:21-cv-1301-CLM**

## MEMORANDUM OPINION

A tornado caused trees to fall on Keith and Kathy Lang's home. The Langs filed a claim under their State Farm homeowner's policy for that damage. The Langs and State Farm dispute the extent of the coverage that State Farm owes the Langs, so the Langs sued State Farm for breach of contract and bad faith.

State Farm moved for summary judgment (doc. 42) and for this court to strike portions of two declarations the Langs rely on in their opposition to summary judgment (docs. 90, 91).

For the reasons explained below, the court will **GRANT** State Farm's motion for summary judgment on the bad-faith claim and **DENY** summary judgment on the breach of contract claim. The court will **DENY** State Farm's motion to strike part of Kathy Lang's declaration (doc. 90), and **DENY AS MOOT** State Farm's motion to strike part of Jonathan Powell's declaration (doc. 91).

## BACKGROUND

The Langs live in Guntersville, Alabama, and their home has twice been damaged by storms. This case is about the second storm, but as you'll see, the first storm matters.

The first storm hit in 2011, and it damaged two parts of the home's foundation—a newer, southwest foundation, and an older, original portion of

the foundation. State Farm paid for the damage to the newer foundation, and the Langs used State Farm's money to repair it. But State Farm did not pay for, and the Langs did not repair, the older foundation.

Fast forward to April 2020. A tornado hit Guntersville, causing trees to fall on the same home, damaging interior and exterior parts of the home. The Langs filed a claim under their State Farm homeowner's policy. After an inspection, State Farm determined there was damage to the roof, roof trusses, hallway, bedrooms, and possibly to the foundation. State Farm paid the Langs $72,988.11 for initial repairs and retained an engineer, Keith Ciccotello, to inspect the home. Ciccotello concluded that moisture in the home could cause fungal growth, the shingle roof needed to be replaced, a vapor barrier should be installed in the foundation space to prevent moisture damage, and that the cracks to the foundation pre-existed the 2020 storm. According to Ciccotello, those cracks were caused by the expansion and contraction of materials and long-term minor differential foundation movement.

State Farm denied coverage for the foundation damage because it determined the 2020 storm did not cause it. But State Farm did pay the Langs an additional $10,332.97 for coverage, and $6,685 for the expenses the Langs incurred to tarp the house after the storm. State Farm also extended Additional Living Expense (ALE) coverage through the end of 2020 so that repairs could be made to the house.

The Langs disagreed with Ciccotello's conclusion about the foundation, so they contacted First Quality Homes to inspect the home and provide an estimate of the necessary repairs. First Quality's estimate was $269,022.26 for the repairs, including $23,544 for foundation and $10,464 for driveway repairs. But First Quality did not provide the foundation and driveway estimates—the Langs gave them those numbers to include in the estimate. While the Langs claim they received those estimates from other contractors, they never provided the names of those contractors. To support their claim that the 2020 storm caused foundation damage, the Langs produced before and after pictures

of the home that showed the homes condition and a new crack formed in the foundation.

State Farm revisited the Lang's home given the First Quality estimate, paid the Langs $41,405.27 for additional repairs, and extended ALE payments for another month. State Farm also told the Langs they would need to provide a signed estimate showing they were moving forward with repairs to extend the ALE payments. The Langs provided a contract with First Quality that was only signed by the Langs. The contract stated that repairs would take six months. Based on that contract, State Farm extended ALE payments to the end of May 2021. But First Quality never signed the contract or received a copy of it, and they told the Langs they could not do the job until August 2021. And the Langs never put down a deposit with First Quality and testified they did not intend to move forward with repairs absent payment from State Farm for foundation repair.

State Farm finished its repair estimate in March 2021 and paid the Langs $27,031.77 for more repairs. But the Langs still did not move forward with any repairs. They claim they were financially unable to move forward with the repairs without additional money from State Farm. And because they disagreed with State Farm's conclusion about the foundation damage, they retained PEC Structural Engineering to inspect the home and provide State Farm with a report. That report recommended the house be demolished and rebuilt, that the 2020 storm damaged the foundation, and that the foundation should be replaced. After reviewing that report, State Farm did not change its decision, and told the Langs it would cease ALE payments as scheduled without an update on the repairs. The Langs provided no update, and State Farm stopped the ALE payments at the end of May 2021.

Since the 2020 storm, the Langs tarped the roof of the house to mitigate further damage. But the Langs never moved forward with any repairs. They used $82,000 of the insurance proceeds to pay off their mortgage and the remaining funds for living expenses. The condition of the house further deteriorated: It is now uninhabitable for many reasons, including a sunken roof

and ceiling, mold, an ever-worsening foundation, and new inhabitants—wild animals.

On top of this, the Langs also claimed personal property damage totaling $77,405.98. But when a State Farm adjuster went to inspect the damaged contents, the Langs had thrown the damaged property away. The Langs contend they had pictures of the damaged property, and that State Farm did not ask to evaluate the property until June 2020—two months after State Farm told Mrs. Lang she could throw the property away. The parties dispute what pictures were taken and who took them. State Farm ultimately paid to replace soft goods in rooms affected by glass and replacement of items in the office because of damage to the office ceiling but did not pay for the other allegedly damaged property. State Farm paid a total of $34,731.74 for the damaged property.

The Langs testified that the entire process caused them pain, mental anguish, frustration, and a sense of betrayal. Both had trouble sleeping, and experienced physical pain from the stress. The Langs' expert says replacing their home would cost $400,000.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

# DISCUSSION

## I.    Motions to Strike

State Farm has moved to strike (1) paragraph five of Jonathan Powell's—the President of PEC Structural Engineering—Declaration (doc. 91), and (2) portions of Mrs. Lang's declaration, including three photographs attached to that declaration that show the house before and after the 2020 storm (doc. 90).

### 1.  Powell's Declaration:

In paragraph five of his declaration, Jonathan Powell declares that "just because cracks are present in a foundation wall does not mean the foundation wall is damaged," and that "[t]hese types of cracks shown in the pictures from the Hurst Affidavit most likely did not affect the structural integrity of the foundation wall and would not necessitate any sort of repair." (Doc. 83-1, p. 11). The court need not—and does not—rely on Powell's declaration to resolve the pending motion for summary judgment. So the court **DENIES** this motion to strike as **MOOT**. (Doc. 91).

### 2.  Mrs. Lang's Declaration:

State Farm also moves to strike paragraphs 2, 3, 4, and 5 of Mrs. Lang's declaration and the pictures referenced in those paragraphs and attached to the declaration. The pictures depict the condition of the home and foundation before and after the storm:







April 9, 2020                                    June 24, 2020

(Doc. 83-1, pp. 5–9). Paragraphs 2–5 of Powell's declaration describe what these pictures depict and when they were taken.

State Farm argues that Mrs. Lang lacks personal knowledge and cannot lay an evidentiary foundation for paragraphs 2–5 or the photographs. According to State Farm, she does not say where the pictures are from, who took them, or that she was present when they were taken. State Farm argues that the declaration and pictures serve as Mrs. Lang's opinion about the before and after conditions of the foundation and home, but that she has offered no

testimony that she inspected the area for cracks before the storm, and that she cannot testify about what inferences to draw from the photographs because that would be argument, not evidence.

The court disagrees. The declaration and photographs are based on Mrs. Lang's personal knowledge and Mrs. Lang testified extensively about the photographs in her deposition. (Doc. 46-3, at 95:15–97:10; 197:5–200:13). So the court **DENIES** this motion to strike. (Doc. 90).

## II.    Breach of Contract

The Langs allege that State Farm breached its insurance contract by refusing to pay the full replacement cost of the Langs' house and by stopping ALE payments to the Langs. State Farm argues this count should be dismissed because (1) the Langs failed to perform their post-loss duties under the contract, and (2) the Langs made material post-loss misrepresentations to State Farm that bar any coverage. State Farm also argues that any mold damage resulting from the tornado is excluded under the policy and thus should not support the Lang's claims, and that the Langs have not presented sufficient evidence to recover emotional distress damages.

"In general, the insurer bears the burden of proving the applicability of any policy exclusion." *Acceptance Ins. Co. v. Brown*, 832, So. 2d 1, 12 (Ala. 2001). The insurance policy at issue excludes coverages for fungus. Thus, State Farm has the burden to prove that policy exclusion applies. As explained below, it does. The allegation of material post-loss misrepresentations also falls into this category. *See Meador v. Cincinnati Ins. Co.*, 915 So. 2d 60, 64 (Ala. Civ. App. 2005). So State Farm also bears the burden of proving there was a misrepresentation.

But the post-loss duties State Farm claims the Langs breached go directly at the heart of the breach of contract claim. The second element of a breach of contract claim is "his own performance under the contract." *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003). To establish their breach of contract claim, the Langs must prove they performed their duties under the contract, including the duties required after a loss.

The Langs also bear the burden of proving any emotional distress they allege State Farm caused.

### 1. Post-Loss Duties:

State Farm asserts that the Langs failed to perform four post-loss duties stated in the insurance policy: (1) cooperating in the investigation of the claim, (2) protecting the property from further damage or loss, (3) making reasonable and necessary temporary repairs as required to protect the property, and (4) exhibiting the damaged property as often as State Farm reasonably required. (Doc. 43-3, p. 36).

The Langs argue that it was reasonable to not repair the home because State Farm's estimate was $120,000 lower than their estimate, and they could not afford to make up that difference on their own or begin repairs without State Farm funding the repairs. "When an insured is financially unable to mitigate damages as required by an insurance policy, the duty to mitigate does not apply." *Stephens Wholesale Bldg. Supply v. U.S. Fire Ins. Co.*, 2009 WL 10687713, at *16 (N.D. Ala. Sept. 29, 2009); *see also Avco Fin. Sus., Inc. v. Ramsey*, 632 So.2d 940, 942–43 (Ala. 1994).

The Langs also argue that State Farm considered the tarping of the home a reasonable effort to protect the property. (Doc. 66-1, p. 49). And they say that State Farm told Mrs. Lang she could throw away damaged items as long as she had a picture and a list of the items, and that State Farm had those pictures. Even more, the Langs say State Farm never stated a need to evaluate personal property items until two months after the loss. (*Id.* at 65–66).

Taken together, there is a genuine dispute of fact as to whether the Langs complied with their post-loss duties under the insurance contract. So the jury must decide this issue, making summary judgment inappropriate.

### 2. Material Post-Loss Misrepresentations:

State Farm next argues that the Langs made material post-loss misrepresentations to State Farm. The policy states that it "is void as to you and any other insured if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after the loss." (Doc. 43-3, p. 45).

In Alabama, "[n]o misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to the insured's rights under the policy." Ala. Code § 27–14–28.

State Farm says that the Langs intended to deceive State Farm when they submitted repair estimates for driveway and foundation repair that totaled $34,000. State Farm says the Langs represented that the estimate was from First Quality, yet First Quality does not do that type of work and testified that the Langs gave them those numbers to include in the estimate. (Doc. 63-3, pp. 27:9–37:21).

State Farm also says the Langs intended to deceive them by claiming the foundation damage resulted from the 2020 storm, when an engineer they used in 2011 told them the damage pre-existed the 2011 storm. State Farm points to Mrs. Lang's testimony that there was nothing wrong with the foundation prior to 2020, (doc. 46-3, p. 37: 4-12), and both plaintiffs' testimony that they did not recall making repairs to the foundation in 2011, but later testimony that they had made some repairs. (Docs. 43-1, pp. 80:14-23, 81:1-23; 46-3, pp. 34:6-23, 35:1-13).

The Langs argue they received the foundation estimate from a separate contractor. And they say that while one report before the 2020 storm identified cracks in the foundation, the report did not indicate which cracks those were and whether they needed to be repaired. The Langs also produced pictures before and after the storm that show a new crack in the foundation.

While a jury might ultimately determine the Langs intended to deceive State Farm, State Farm has not presented enough evidence for this court to say that a reasonable juror could not rule in the Langs' favor. So summary judgment is also inappropriate on these grounds.

3. Mold Damage:

State Farm argues that any mold damage resulting from the tornado is specifically excluded under the policy. The policy excludes coverage for "fungus" regardless of the cause. (Doc. 43-3, pp. 18, 30, 33) (defining fungus as "any type or form of fungus, including mold, mildew, mycotoxins, spores,

scents, or byproducts produced or released by fungi."). Alabama courts have upheld this type of prohibition of coverage. *See Koch v. State Farm Fire & Cas. Co.,* 565 So. 2d 226, 231 (Ala. 1990).

The Langs do not refute this policy language and its applicability in Alabama. They argue instead that State Farm has not specified what portion of the Langs' damages relates to mold, and that the Langs' experts' cost estimate did not include money for mold remediation. (Doc. 64-1, pp. 103:19 to 104:7). They also say that State Farm does not dispute that other damage caused by rain and exposure to the elements falls within the policy coverage.

The Langs' claims do not appear to rely on mold damage to prove the damage to their home—mold remediation does not play into their expert's cost estimate to demolish the home. Still, the court agrees with State Farm that any mold damage from the storm is excluded under the policy. So to the extent that the Langs to attempt to base their damages on mold damage, that basis should be excluded.

4. <u>Emotional Distress and Mental Anguish Damages</u>:

Finally, State Farm argues that the Langs have presented no evidence that supports their claims for emotional distress based on a breach of contract.

Alabama law rarely allows for mental anguish damages based on a breach of contract. An exception exists "where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *Liberty Homes, Inc. v. Epperson,* 581 So. 2d 449, 454 (Ala. 1991). For that exception to apply, "[t]here must at least be some evidence in a plaintiff's favor at the summary judgment stage so that the court is convinced that at trial, a plaintiff seeking to recover mental anguish damages may be able to present evidence that 'he, in fact, suffered emotional distress.'" *Pickens v. Liberty Mut. Ins. Co.,* 966 F. Supp. 2d 1265, 1275 (N.D. Ala. 2013) (quoting *Ex parte Grand Manor, Inc.,* 778 So.2d 173, 179 (Ala. 2000)).

The Langs point out that under Alabama law, "[m]ental anguish includes anxiety, embarrassment, anger, fear, frustration disappointment, worry,

annoyance, and inconvenience." *Slack v. Strean*, 988 So. 2d 516, 531 (Ala. 2008). And "[o]nce the plaintiff has presented some evidence of mental anguish, the question whether he should recover for such mental anguish, and, if so, how much, is a question reserved for the jury." *Id.* According to the Langs, their extensive testimony about mental anguish creates a jury question, despite it being the only evidence they provide.

The court agrees with the Langs. They have presented evidence that they, "in fact, suffered emotion distress," *Pickens,* 966 F. Supp. 2d at 1275, so it is up to a jury to decide whether and how much they should recover. The court thus denies summary judgment on this ground.

—

In sum, the court **DENIES** State Farm's motion for summary judgment on the breach of contract claim, but agrees with State Farm that the Langs cannot seek mold-related damages at trial.

## III.  Bad Faith

The Langs' second allegation is that State Farm acted in bad faith by intentionally refusing to pay the full claim without a debatable reason for doing so, and, knowing that it did not have a debatable reason, State Farm intentionally and recklessly failed to investigate the Langs' claims. The Langs also allege that State Farm created their own debatable reason for denying the claim and relied on an ambiguous portion of the policy to deny the claim.

State Farm moved for summary judgment on this count, arguing that it did not act in bad faith because it conducted three inspections of the property, retained an engineer to inspect the property, and paid the Langs for the covered damages. Thus, according to State Farm, they had at least a debatable reason for denying some portions of the coverage.

1. Legal Standard:

Under Alabama law, there are two forms of bad-faith refusal to pay an insurance claim: a "normal" bad-faith claim and an "abnormal" bad-faith claim. *White v. State Farm Fire & Cas., Co.*, 953 So. 2d 340, 347–48 (Ala. 2006). A normal bad-faith claim is one based on refusal to pay, while an abnormal bad-

faith claim is one based on failure to investigate. "These are not two torts but a single tort with different options for proof." *Coleman v. Unum Grp. Corp.*, 207 F. Supp. 3d 1281, 1284 (S.D. Ala. 2016).

To establish a normal bad-faith claim a plaintiff must show (1) "an insurance contract between the parties and a breach thereof by the defendant" (2) "an intentional refusal to pay the insured's claim" (3) "the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason)" and (4) "the insurer's actual knowledge of the absence of any legitimate or arguable reason." *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013) (cleaned up). The plaintiff bears a heavy burden to prevail on a normal bad-faith claim—the "underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008).

To establish an abnormal bad-faith claim a plaintiff must establish "(1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." *Simmons v. Cong. Life Ins. Co.*, 791 So. 2d 371, 379 (Ala. 2000). On this claim, the material question is whether the insurer "recklessly or intentionally failed to properly investigate" the insured's "claim or to subject the results of an investigation to a cognitive evaluation." *Id.* at 379.

For both normal and abnormal claims, "the tort of bad faith requires proof of the third element, absence of legitimate reason for denial." *Brechbill*, 144 So. 3d at 258. In other words, "the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *National Sec. Fire and Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). And any bad-faith claim requires "sufficient evidence of 'dishonest purpose' or breach of known duty' through some motive of self-interest or ill will." *Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283 (Ala. 2005). Thus, "[t]o defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable." *Liberty Nat. Life Ins. Co. v. Allen*, 699 So. 2d 138, 143 (Ala. 1997).

2. Analysis:

The Langs seek to prove their bad-faith claim as both a refusal to pay (normal claim) and a failure to investigate (abnormal claim). While there may be a dispute of material fact as to whether State Farm breached its contract with the Langs, the breach of contract claim is not "so strong that the [Langs] would be entitled to a preverdict judgment as a matter of law." *Jones*, 1 So. 3d at 32. So the Langs attempt to prove their bad-faith claim based on a refusal to pay fails.

As for the failure to investigate (*i.e.*, abnormal bad faith), the Langs say that State Farm acted in bad faith by focusing on factors that favored non-coverage for the damage and ALE while ignoring evidence that favored additional coverage such as State Farm's delays in the process and the Langs' engineering report that came to a different conclusion from the original report.

State Farm points to three steps it took that gave it at least an arguable reason to deny portions of the Langs' repairs, ALE, and personal property claims: (1) conducting three inspections of the home, (2) retaining an engineer to inspect the home, and (3) paying the Langs for other damages State Farm covered. State Farm argues that its second action—retaining an engineer—is especially relevant for the bad-faith claim, as action based on a professional opinion can provide an "arguable and legitimate reason" for denying a claim. *Adams v. Auto- Owners Ins. Co.*, 655 So. 2d 969, 972 (Ala. 1995); *Butler v. Allstate Indem. Co. Inc.*, 2011 WL 1559592, at *6 (M.D. Ala. 2011). State Farm based its decision, at least in part, on the engineer's conclusion that the home was repairable, rather than a total loss.

State Farm also points out that it paid the Langs ALE for over a year and asked them to show they were moving forward with repairs required by the policy. But the Langs only attempt at repairs was putting a tarp on the roof. (Doc. 46-3, pp. 55:11–56:5). They never paid a down payment or signed a contract with a contractor (Docs. 63-3, pp. 47:12-23–48:1-18) and they had no intention of moving forward with repairs (Doc. 46-3, p. 118:8-13).

The Langs also argue that the ALE provision is ambiguous because on one hand it says that State Farm will pay the shortest of the time required to repair or replace the premises, the time required for the household to settle

elsewhere, or 24 months, and on the other hand the determination is made case-by-case depending on the merits of the file, an estimated time for the repairs, and evidence of repairs proceeding. The Langs say that this also establishes State Farm's bad faith.

But State Farm points out that the ALE provision must be read together with the insureds' obligations to cooperate in the investigation, protect the property from further damage, and make reasonable and necessary repairs required to protect the property. Because the Langs failed to meet those obligations, State Farm was not required to continue to pay ALE.

The court finds that State Farm's actions in investigating the claim, paying for damage to the home, paying ALE for over a year, and giving the Langs guidance on when and why they would cease ALE payments overcome a claim of abnormal bad faith because these facts show that (a) State Farm did not intentionally fail to conduct an investigation and (b) State Farm had an arguable basis for denying the extra coverage that the Langs sought. So the court **GRANTS** State Farm's motion for summary judgment on the Langs' bad-faith claim.

## CONCLUSION

For the reasons stated above, the court **DENIES** State Farm's motion to strike paragraph five of Jonathan Powell's declaration as **MOOT** (doc. 91) and **DENIES** the motion to strike portions of Kathy Lang's deposition. (doc. 90). The court **DENIES** State Farm's motion for summary judgment on the breach of contract claim and **GRANTS** the motion for summary judgment on the bad-faith claim. (Doc. 42).

**DONE** and **ORDERED** on May 1, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

14